**Randall O. WALKER, Plaintiff-Appellant,**

v.

**Gale S. NEWGENT and General Motors Corporation and its Opel Division, its subsidiary, Adam Opel, AG, Defendants-Appellees.**

**No. 78–1371**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1978.

---

* Rule 18, 5th Cir.; *see Isbell Enterprises, Inc. v. Citizens Cas. Co. of New York et al.*, 5th Cir., 1970, 431 F.2d 409, Part I.

Richard W. Mithoff, Houston, Tex., for plaintiff-appellant.

John T. Golden, John E. Kennedy, Houston, Tex., for General Motors Corp. and Adam Opel AG, Vinson & Elkins.

Before RONEY, GEE and FAY, Circuit Judges.

GEE, Circuit Judge:

Plaintiff-appellant, Randall Walker, while a member of the United States Armed Forces in Germany, was a passenger in a 1963 Opel Rekord when it was involved in an automobile collision on December 7, 1970, in Germany. He suffered permanent injuries and sued Newgent, the driver of the car, for negligence, subsequently settling with him. He also sued General Motors and Adam Opel AG (Opel) in Texas on the basis of negligence, strict liability in tort for the defective and dangerous design and manufacture of the windshield glass in the 1963 Opel Rekord, and breach of express and implied warranties. Plaintiff has based jurisdiction on diversity of citizenship, seeking service under the Texas long-arm statute.

The automobile in question was designed, manufactured, and sold by Opel, a wholly owned subsidiary of General Motors located in Germany. Opel is a German corporation with its principal place of business in Russelsheim and is primarily engaged in the manufacture of automobiles. Opel has never maintained an office or place of business within the State of Texas, or, indeed, within the United States. Opel has no agents, servants, or employees of the company assigned sales responsibilities operating within the State of Texas or the United States. Opel has never entered into any contract which requires performance by it in whole or in part within the State of Texas, nor has it any assets located there. In the past years no automobile sales were made to importers (i. e., auto dealers) in the State of Texas. All sales made to the United States importer or distributor are FOB at a point outside the United States. Title to the automobiles, which become property of the importer, passes to the importer prior to their entry into the United States. The sole importer to which Opel sells automobiles for resale in the United States is Buick Motor Division of General Motors Corporation. Indeed, the relationship between GM and Adam Opel AG has been characterized as one of customer and seller.

Opel, which has its own engineering and design staff and its own sources of supply, manufactures automobiles primarily for the German and other European markets. The automobile involved in the accident at issue in this case, a 1963 Opel Rekord, was not one of those sold to Buick for export to the United States. It was purchased second-hand by Newgent in Germany, and the model in question was not at that time being exported to the United States.

This action was filed on April 12, 1973. Process was served through a single citation in April 1973 on General Motors Corporation and its subsidiary, Opel, through General Motors' agent for service of process, C. T. Corporation Systems in Dallas, Texas. On August 12, 1974, the district court ordered that separate citations be issued and served on Opel. In response to that order, plaintiff served (1) C. T. Corporation, (2) Mr. T. M. Wetzel, Secretary-Treasurer of Al Parker Buick Company, a local automobile dealer, (3) Mrs. A. R. Varela, Secretary to the zone service manager of the Buick Motor Division of GM, and (4) the Secretary to State of Texas, pursuant to Tex.Rev.Civ. Stat.Ann. art. 2031b. Opel moved the court to vacate and set aside service of process and to dismiss for lack of personal jurisdiction, submitting affidavits from the first three persons listed above reflecting that they were not authorized to receive service for Opel. The district court granted Opel's motion. *Walker v. Newgent,* 442 F.Supp. 38 (S.D.Tex.1977).

Subsequently, General Motors moved for summary judgment on grounds that (1) it did not design, manufacture or sell the automobile in question, and (2) there was no ground for disregarding the separate corporate existence of Opel, as the district court had already held when it granted Opel's motion to dismiss. On February 6, 1978, the district court granted GM's motion.

Plaintiff has appealed this judgment, asserting that the district court does have personal jurisdiction of Opel. Plaintiff contends that he has made out a prima facie case that the defendant Opel is doing business in the State of Texas through the

activities of and based on the relationship with its parent corporation, the defendant GM, and that this cause of action arises out of and is connected with the marketing and selling of Opel automobiles, both in this country and abroad. Plaintiff further maintains that the degree of ownership and control of GM over Opel clearly rises to the level necessary to impute business in Texas by GM Corporation to its wholly owned subsidiary, Opel.

Furthermore, plaintiff argues, since the court has in personam jurisdiction over Opel and since the business of Opel is clearly imputed to GM, the granting of the motion for summary judgment filed by the defendant GM should be reversed.

Plaintiff has predicated the existence of in personam jurisdiction over Opel on the Texas long-arm statute, Tex.Rev.Civ. Stat.Ann. art. 2031b. In deciding whether the state jurisdictional statute confers jurisdiction over a nonresident defendant in a diversity suit, it must be determined that (1) the defendant is in fact amenable to service under the statute (state law of the forum controls this question), and (2) if the state statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process. *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir. 1977). Plaintiff, the party seeking to invoke the court's jurisdiction, has the burden of establishing that jurisdiction by making a prima facie showing of facts on which it may be predicated. *Product Promotions, Inc. v. Cousteau*, 495 F.2d at 490–91.

The Texas long-arm statute provides that one who "does business" in the state is amenable to process in suits arising from such business. Since Opel, a German corporation, has neither assets, office, agents, nor employees in Texas, the traditional manifestations of "doing business" are not present. Also significant is the fact that even though Opel sold cars to Buick Motor Division of GM, the car in question was a model which was not manufactured for export and in fact was sold second-hand in Germany; further, regarding those cars which were sold for export, title passed in Germany, and no contracts for sale were entered into or to be performed in the State of Texas.

"Doing business" also includes entering into a contract to be performed in whole or in part within the state and the commission of a tort in whole or in part within the state. *See Jetco Electronic Industries, Inc. v. Gardiner, supra; Product Promotions, Inc. v. Cousteau, supra; Wilkerson v. Fortuna Corp., supra. Jetco* provides a gloss for the tort aspect of "doing business":

> It is immaterial that the tortious act occurred outside the state, for it is well established that the statute extends to injury occurring within the state as a result of a wrongful act committed outside the state. [citations omitted]

473 F.2d at 1232 n.5. In the instant case, Opel did not commit a tort in whole or in part within the State of Texas. First, the automobile in question was designed and manufactured in Germany. Furthermore, the accident which is the basis of this suit also occurred in Germany. Thus, the activity here does not satisfy the tort provision of the Texas long-arm statute.

As for the contract portion of the Texas long-arm statute, for jurisdiction to lie appellant must make a prima facie showing that "(1) a contract to be performed in whole or in part within Texas existed between itself and appellees and (2) the present suit arose out of that contractual arrangement." *Product Promotions, Inc. v. Cousteau*, 495 F.2d at 491. Since the record contains no evidence of any contract between plaintiff and either defendant, this provision of the statute is likewise inapplicable.

Nor can it be said that Opel, because of its admitted sales of Opel automobiles to GM for resale in the United States, is doing business in Texas. Article 2031b does ex-

pressly state that there are "other acts that may constitute doing business," and it is true that this circuit has upheld the exercise of jurisdiction on the basis of a manufacturer's placing a defective product in the "stream of commerce"; but these cases have involved an injury that occurred in the forum state, and the court was construing the tort clause of the statute. *See Coulter v. Sears, Roebuck & Co.,* 426 F.2d 1315 (5th Cir. 1970); *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969). A further factual distinction is that the Opel Rekord at issue was introduced into international commerce and was never put into service in the United States. *See Reich v. Signal Oil & Gas Co.,* 409 F.Supp. 846 (S.D.Tex.1974), *aff'd,* 530 F.2d 974 (5th Cir. 1976).

Notwithstanding all of the above, personal jurisdiction can still be found to exist over Opel if the relationship between the parent corporation, GM, which does business in the State of Texas, and the subsidiary German corporation, Opel, is one which would allow the court to find that the doing of business of the parent corporation can be imputed to the subsidiary. *Reul v. Sahara Hotel,* 372 F.Supp. 995 (S.D.Tex. 1974). Plaintiff contends that such a relationship exists. Since the alleged agency is one of the facts upon which appellant predicates his argument for jurisdiction, he has the "burden of making a prima facie showing of [its] existence." *Product Promotions, Inc. v. Cousteau,* 495 F.2d at 492. Plaintiff has not met his burden.

Our cases dealing with the agency relationship with regard to in personam jurisdiction and the requirement of doing business address the situation where jurisdiction is sought over the parent corporation through its subsidiary's local activities. *See Product Promotions, Inc. v. Cousteau,* 495 F.2d at 492 and cases cited therein. The issue in the instant case is the reverse of that situation, but the same legal principles apply.

Plaintiff asserts that "[t]he degree of ownership and control of General Motors Corporation over Adam Opel AG clearly rises to the level necessary to impute business in Texas by General Motors Corporation to its wholly-owned subsidiary, Adam Opel AG." However, the evidence does not support this claim. As the record shows and the district court determined, the two corporations "do not have the same corporate offices or the same registered agent, nor are there any mutual officers or directors. There are no facts to support a prima facie case of actual control." Furthermore, the record establishes that Opel maintains its own engineering and design staff and its own sources of supply and that at most only eleven percent of its total production output was ever sold to Buick in any one year. As noted earlier, deposition testimony characterizes the relationship between GM and Opel as one of customer-manufacturer.

Although GM does own 100% of Opel's stock, this fact alone is not sufficient to fuse the subsidiary into the parent corporation for the purpose of establishing an agency relationship. *See Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Turner v. Jack Tar Grand Bahama,* 353 F.2d 954 (5th Cir. 1965); *Reul v. Sahara Hotel, supra.* Indeed, in *Gentry v. Credit Plan Corp.,* 528 S.W.2d 571, 573 (Tex.1975), the Texas Supreme Court stated that:

> A subsidiary corporation will not be regarded as the alter ego of its parent because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of control that stock ownership gives to stockholders.

Thus plaintiff has not presented evidence establishing such a degree of control by General Motors over Opel as to permit imputing the business done in Texas by GM to its subsidiary Opel.

Finally, it is true that the Texas long-arm statute "authorizes assertion of personal jurisdiction over nonresidents to the limits of due process." *Great Western United Corp. v. Kidwell,* 577 F.2d 1256 (5th Cir. 1978), *citing Jetco, supra; Product Promotions, supra;* and *U-Anchor Advertising,*

*Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977). This court's most recent due process analysis is found in *Kidwell* :

> [T]he governing principle is the fairness of subjecting a defendant to suit in a distant forum. Only if the nonresident defendant has such "minimum contacts" with the state "that the maintenance of the suit does not offend 'traditional notions of fair play and justice'," *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), or if the defendant has performed some act "by which [it] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), may the forum, consistently with due process, extend its long arm to embrace it. *Jetco Electronic Industries,* 473 F.2d at 1234; *see also Product Promotions, Inc.,* 495 F.2d at 494. Of necessity, inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case. 2 L. Moore, ¶ 4.25[5] at 1172.

577 F.2d at 1266. Reading the "minimum contacts" requirement very broadly, the *Kidwell* court declared that these contacts "need not arise from actual physical activity in the forum state; activities in other forums with foreseeable effects in the forum state will suffice." *Id.* at 1266–67. In *Kidwell* the court found that the defendant's actions in regard to the plaintiff corporation did have foreseeable effects in Texas, the forum state. In the instant case, however, Opel's activities in Germany from which this cause of action arises did not have foreseeable effects in Texas, especially since the automobile in question was not manufactured for export and was sold only domestically.

Furthermore, even though the *Kidwell* decision recognizes that the Texas long-arm statute extends to the limits of due process, it firmly maintains the proposition that "unilateral activity by the plaintiff cannot produce the minimum contacts necessary to satisfy due process" and unequivocally requires some activity by the defendant. *Id.* at 1268. In the instant case, all the activity concerning this cause of action occurred in Germany. Indeed, it appears that only because the plaintiff now resides in Texas was this action brought in that forum.

■ On all of the above considerations, then, we conclude that the trial court correctly determined that the relationship between the defendant Opel and the forum state is too attenuated to support in personam jurisdiction.

■ Defendant GM's motion for summary judgment was likewise properly granted. The sole basis of plaintiff's argument for reversal of the summary judgment appears to be the relationship between GM and Opel. This relationship did not comprise sufficient ownership and control to establish an agency relationship or to permit disregarding their separate corporate entities. And since the record reveals that GM did not design or manufacture the automobile in question, and as we have concluded that no agency relationship exists between GM and Opel, it necessarily follows that GM cannot be held liable for any alleged failing of Opel in the design and manufacture of the automobile in question.

AFFIRMED.