**JAMESBURY CORP., Plaintiff,**

v.

**KITAMURA VALVE MFG. CO., LTD., KTM Industries, Inc., and Young S. Kim, Defendants.**

Civ. A. No. 70–1194.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 8, 1980.

Robert C. Miller, Oblon, Fisher, Spivak, McClelland & Maier, Arlington, Va., for plaintiff.

Ralph R. Browning, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

McDONALD, District Judge.

Presently before this Court is defendant Kitamura Valve Mfg., Co., Ltd.'s Motion to Dismiss for Lack of Jurisdiction and Motion to Quash Return of Service of Process. Defendant Kitamura seeks dismissal from this suit on the basis that the Court lacks in personam jurisdiction over it and that it is not amenable to service of process under Fed.R.Civ.P. 4(d)(7) and the Texas long arm statute, Vernon's Tex.Rev.Civ.Stat.Ann., Article 2031b.

Plaintiff Jamesbury Corp. brought this suit for declaratory and injunctive relief under 28 U.S.C. §§ 1338(a), 2201 and 2202 to prevent the importation and sale of foreign manufactured ball valves which allegedly infringe upon its United States patent. Named as defendants were Kitamura Valve Co., Ltd. (Kitamura), a foreign corporation with a principal place of business in Tokyo, Japan, and its wholly owned American subsidiary, KTM Industries, Inc. (KTM), a Texas corporation with a principal place of business in Houston, Texas. Kitamura is not licensed to do business in Texas and does not have an agent for service of process here. It argues that it is not "doing business" in this jurisdiction as the term is used in the Texas long arm statute, and that it does not have the requisite "minimum contacts" to subject it to the jurisdiction of this court.

Plaintiff argues that Kitamura was "doing business" in Texas on the basis of two separate contracts with a resident of Texas. The first contract involved a "verbal agreement" between Kitamura and Young S. Kim pursuant to which Kim conducted (along with a second agent) marketing surveys for Kitamura's ball valves, contacted potential customers and representatives, and generally prepared for the establishment of the subsidiary KTM. The second contract alleged was a purchase agreement

between KTM and Kitamura for the purchase of the ball valves.

■ At the outset it should be noted that plaintiff does not claim that Kitamura is subject to the jurisdiction of this Court by virtue of having a wholly owned subsidiary located and doing business in Texas. Indeed, unless it can be established that KTM was an agent of Kitamura or that KTM failed to maintain a legal existence distinct from that of Kitamura, claims which plaintiff has not alleged in this action, the mere transaction of business through a wholly owned subsidiary does not render the parent company present in the locale of its subsidiary for jurisdictional purposes. *Consolidated Textile Corp. v. Gregory*, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047 (1933); *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Aro Mfg. Co., Inc. v. Auto Body Research Corp.*, 352 F.2d 400 (1st Cir. 1965); and *Murdock v. Volvo of America Corp.*, 403 F.Supp. 55 (N.D.Tex.1975). Plaintiff argues, however, that in personam jurisdiction exists on the basis of activities directly involving Kitamura.

■ Section 4 of the Texas long arm statute, *supra* provides that:

> For the purposes of this Act, and without including other acts that may constitute doing business, any foreign corporation . . . shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Plaintiff posits the purchase agreement between KTM and Kitamura as satisfying the "doing business" requirement of this statute. However, the statute requires, and the courts have emphasized, *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 n. 11 (5th Cir. 1974); *Atwood Hatcheries v. Heisdorff & Nelson Farms*, 357 F.2d 847, 852 n. 14 (5th Cir. 1966); and *Clark Advertising Agency, Inc. v. Tice*, 331 F.Supp. 1058, 1060 (N.D.Tex.1971), that in deciding jurisdiction on the basis of a contract the place of performance and not the place of making, is the determining factor. According to defendant Kim, the purchase agreement at issue calls for the sale of ball valves to be completed in Japan with shipments FOB, Yokahama, Japan. (Affidavit of Young S. Kim, ¶ 8.) This contention is uncontroverted. The Court finds that because there is no evidence that any part of the performance of the purchase agreement took place in Texas, defendant Kitamura is not doing business in Texas under this contract. *See, AMCO Transworld, Inc. v. M/V Bambi*, 257 F.Supp. 215 (S.D.Tex.1966); *Computer Synergy Corp. v. Business Sys. Products, Inc.*, 582 S.W.2d 573 (Tex.Civ. App.1979).

Plaintiff also identifies the "verbal agreement" between Kim and Kitamura as the basis for concluding that Kitamura was "doing business" in Texas. Under this agreement, Kim conducted marketing surveys, (Kim Affidavit, ¶ 4) recruited personnel, (Kim Deposition p. 62) contacted potential representatives and customers, (Kim Deposition p. 52) and located and secured quarters for setting up KTM. (Kim Deposition, p. 63) During the period in which Kim worked on this project—from March 15, 1970 until October 12, 1970—Kim was at all times acting as a paid agent of Kitamura (Kim Deposition, pp. 64–65) at least until Kim became an employee of KTM, (Kim Affidavit, ¶ 5 and 6) after KTM was formed as a Texas corporation on October 13, 1970. Plaintiff argues that Kitamura was doing business by virtue of Kim's performance of his duties under the verbal agreement with Kitamura.

■ While it may well be that Kitamura's activities fall within the long arm statute in that Kitamura "enter[ed] into a contract . . . with a resident of Texas to be performed in whole or in part by either party in the State,"[1] our inquiry does not

---

1. The Texas long arm statute on its face requires that plaintiff's cause of action arise directly out of defendant's contacts with Texas, Article 2031b(2) and (3). However, courts

end there. In order to find a defendant subject to the Court's jurisdiction under a state statute, federal law must be applied to determine whether the assertion of jurisdiction over the defendant comports with due process. *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232 (5th Cir. 1973); *Barrett v. Browning Arms Co.,* 433 F.2d 141 (5th Cir. 1970). "Although Article 2031b represents an effort by Texas to exploit to the fullest the expanding limits of in personam jurisdiction, *Atwood Hatcheries v. Heisdorf & Nelson Forms* [supra], due process nevertheless imposes some restraints on a state's assertion of jurisdiction over a nonresident defendant." *Jetco Electronic Industries, supra,* at 1234. The Fifth Circuit has stated the dual test which has been applied by the Supreme Court [2] in determining whether a court may take jurisdiction without depriving a defendant of due process of law. First, there must be some minimum contact with the state which results from an affirmative act of the defendant. Secondly, it must be fair and reasonable to require the defendant to come into the state and defend the action. *Product Promotions, Inc. v. Cousteau, supra,* at 494. *See also* 2 Moore's Federal Practice ¶ 4.25[5] at 1171–72.

The activities of defendant Kim during the seven month period in which he served as agent for Kitamura was an affirmative act by Kitamura which resulted in minimum contacts with the State of Texas.

However, these minimum contacts are not the activities which give rise to this suit. Kim's activities were in preparation for the establishment of KTM; this suit arises out of plaintiff's attempt to enjoin the importation and sale of ball valves into this country which allegedly violate its patent rights. Although the two activities are related, plaintiff's cause of action does not arise out of the contract between Kim and Kitamura. The cause of action is instead based upon the planned activities of the subsidiary KTM in importing and selling the disputed ball valves.

Various courts have identified this factor, i. e., the requirement that the cause of action arise out of the same facts which allegedly form the basis of in personam jurisdiction, as a significant element in determining the constitutional validity of exercising in personam jurisdiction over a foreign corporation. *Product Promotions Inc., supra,* at 494 n. 17; *Blount v. Peerless Chemicals (PR.) Inc.,* 316 F.2d 695 (2nd Cir. 1963); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584 (1st Cir. 1970); *Hardy v. Pioneer Parachute Co., Inc.,* 531 F.2d 193 (4th Cir. 1976); *Threlkeld v. Tucker,* 496 F.2d 1011, cert. denied 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (9th Cir. 1974); *Lone Star Motor Import, Inc. v. Citroen Cars Corp.,* 185 F.Supp. 48 (S.D.Tex.1960) rev'd on other grounds 288 F.2d 69 (5th Cir. 1961); *Walker v. Newgent,* 442 F.Supp. 38 (S.D.Tex.1977); 2 Moore's, supra, ¶ 4.25[5] at 266–67 n. 18.[3]

have held the statutes applicable where defendant's activities are unrelated to the cause of action. *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591 (5th Cir. 1969); *Wilkerson v. Fortuna Corp.,* 554 F.2d 745 (5th Cir. 1977); *Black v. Acme Markets, Inc.,* 564 F.2d 681 (5th Cir. 1977); *Navarro v. Sedco, Inc.,* 449 F.Supp. 1355 (S.D.Tex.1978); *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977). These decisions are premised on the construction of Article 2031b as extending as far as the limits of due process permit, *Product Promotions, Inc., supra; Atwood Hatcheries, supra; U-Anchor Advertising, Inc., supra;* and Tex.Ann. Rules Civ.Proc., rule 108, (Vernon) and the conclusion that due process does not require, in every instance, that plaintiff's cause of action arise directly from defendant's state-connected activities. However, this issue is certainly an important factor to be considered in weighing

the due process claim and is taken up more fully below.

2. *See, generally, International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Perkins v. Benquet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. Int'l. Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

3. Although there is widespread support for requiring that a foreign corporation's activities in the forum state which are not systematic and continuous actually give rise to the cause of action asserted in the suit, the courts have not been consistent as to how they factor in this requirement. At one time, Texas state and federal courts appeared to require this connec-

In *Odom v. Thomas,* 338 F.Supp. 877 (S.D. Tex.1971) this Court (per J. Seals) dismissed a cause of action against a foreign corporation whose activities in the forum did not give rise to the cause of action. *See, also Reich v. Signal Oil and Gas Co.,* 409 F.Supp. 846 (S.D.Tex.1974).

The Fifth Circuit has concluded that due process does not require that plaintiff's cause of action arise directly from defendant's activities where those activities have been substantial and continuous or where the defendant has committed some tortious activity in the forum state. *Eyerly Aircraft Co., supra; Wilkerson, supra;* and *Black, supra.* These cases have been consistent with the Supreme Court's holding that

> [I]f the same corporation carries on, in that state, other continuous and systematic corporate activities as it did here . . . those activities are enough to make it fair and reasonable to subject that corporation to proceedings in personam in that state, at least insofar as the proceedings in personam seek to enforce causes of action relating to those very activities or to other activities of the corporation within the state. *Perkins v. Benquet Consolidated Mining Co., supra,* 342 U.S. at 445–46, 72 S.Ct. at 418.

■ However, where the foreign corporation's contacts with the forum state are not substantial and continuous but are only minimal and infrequent, there is greater

reason to require that these contacts actually give rise to the cause of action. 2 *Moore's, supra,* ¶ 4.25[5] at 266–67. In essence it is a question of fairness. It is unreasonable to require a foreign corporation to come all the way from Japan to defend itself in this action where its only contacts with Texas involved a brief seven month effort by, at most, two restricted agents to lay the ground work for the incorporation of a subsidiary. We find that this contact is not so substantial as to allow this Court to assume jurisdiction over Kitamura in a suit involving an unrelated activity.

The Supreme Court's recent decision in *National Geographic v. Calif. Equalization Bd.,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), in which it held that federal due process is not offended when a state imposes a use tax that is unrelated to the activities of the non-resident within the state, does not dictate a different conclusion in this case. In *National Geographic,* the Supreme Court found that the defendant's maintenance of two offices in the forum state and the solicitation by defendant's employees of some $1 million in advertising copy a year amounted to a sufficient nexus upon which the state could assume jurisdiction in order to tax unrelated activities. In so doing, it specifically rejected the standard applied by the lower court that the "slightest presence" within the taxing state would render a foreign corporation amenable to its taxing laws.[4]

tion to be shown under Article 2031b. *Product Promotions, supra,* at 491; *O'Brien v. Lanpar Co.,* 399 S.W.2d 340 (Tex.1966). *But see,* Note 1, supra. Other courts, cited above, have applied the requirement in determining whether the foreign corporation has sufficient "minimal contacts" with the forum state, but courts most persuasively have considered this factor in determining whether the assertion of jurisdiction was "fair and reasonable". *See, Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745 (4th Cir. 1971), *cert. denied* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 2652 (1971); *2 Moore's, supra,* ¶ 4.25[5] at 266–67, n. 18. In any event, given the construction of Article 2031b as coextensive with due process requirements, note 1, *supra,* we conclude that it is more appropriate to address the issue as an element of due process.

4. The Court later indicates that their conclusion that the foreign corporation had a sufficient nexus to the taxing forum was based in part upon the type of tax sought to be imposed. 430 at 560, 97 S.Ct. at 1392. The nexus established, while close enough to support the use-tax sought to be imposed, would have been insufficient to support a direct tax since there was no connection between the activity of the foreign corporation sought to be taxed and that corporation's activity within the state. *Id.* A decision which is so dependent on the type of tax a state seeks to impose does not signal a retrenchment from the cumulative effect of past decisions, in cases not involving taxation, requiring corporate activity properly characterized as "minimal" to actually give rise to the cause of action. See note 3, *supra.*

In deciding that the Court lacks in personam jurisdiction over Kitamura, it is important to bear in mind that the "minimum contacts" test as set out by the Supreme Court is not susceptible to any mechanical application. *Hanson v. Denckla, supra.* The facts of each case must be carefully weighed for few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." *Kulco v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978), citing *Estin v. Estin,* 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948). Yet, as the Supreme Court has recently admonished lower courts in reviewing federal due process restraints on state jurisdictional statutes, "the flexible standard of *International Shoe* does not herald the eventual demise of all restrictions on the personal jurisdiction of state courts." *Kulco, supra,* at 101, 98 S.Ct. at 1701.

Consequently, it is hereby ORDERED, ADJUDGED, and DECREED that Kitamura's Motion to Dismiss for Lack of Jurisdiction and Motion to Quash Return of Service of Process are GRANTED.