## MARITIME TRANSPORT OVERSEAS, INC.

#### v.

## SAUDI RESEARCH & DEVELOPMENT CORPORATION, a/k/a REDEC.

### Civ. A. No. H–80–992.

United States District Court,
S. D. Texas,
Houston Division.

Feb. 5, 1981.

James Carmody, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for plaintiff.

Eugene Silva, Vinson & Elkins, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

CIRE, District Judge.

Pending before the Court is Defendant's motion to dismiss for lack of personal jurisdiction, insufficiency of service of process, and *forum non conveniens*. Plaintiff has filed an Amended Motion for Partial Summary Judgment on the Issue of In Personam Jurisdiction, also pending, which opposes Defendant's motion to dismiss. For the reasons set forth below, the Court concludes that it may properly assert *in personam* jurisdiction over the Defendant, that service of process was sufficient, and that dismissal *forum non conveniens* is inappropriate. Accordingly, Defendant's motion to dismiss is DENIED, and Plaintiff's motion for summary judgment on the issue of personal jurisdiction is GRANTED.

Additionally, Plaintiff's Motion to Strike Defendant's Original Answer is DENIED. Plaintiff's Motion for Leave to File Amended Complaint is also DENIED; the proposed amended complaint is largely evidentiary, and does not fall within the intended scope of Fed.R.Civ.P. 15.

This case arose from preparations for a major construction project in the Kingdom of Saudi Arabia. Defendant Saudi Research & Development Corporation (REDEC) contracted to construct a sewer project in Mecca. Because local suppliers were unable to provide the type of pipe needed for the project, REDEC ordered pipe from Johns-Manville Corporation of Denver, Colorado. Some of the pipe was to be manufactured at a Johns-Manville plant in Texas; all of the pipe was to be sent to Houston for shipment to Saudi Arabia.

The shipping contract was handled by Richard A. Schmidt, a California resident. He arranged for Maritime Transport Overseas, Inc. (MTO), a Texas resident, to ship the pipe from Houston to Jeddah under a contract that provided, *inter alia*, for demurrage at the rate of $5,000 per day and for dead freight at the rate of $67.50 per ton. The ship was delayed in the Port of Jeddah for 95 days, generating the substantial demurrage charge claimed by MTO, the Plaintiff. Remaining shipments of pipe left Houston via other carriers, giving rise to the dead freight claim.

REDEC contends that it has no place of business and no registered agent for process in Texas, that it conducts no business here and hence is not amenable to service of process. MTO predicates personal jurisdiction on the Texas long-arm statute, Tex. Rev.Civ.Stat.Ann. 2031b(3) (Vernon), which permits service on the Secretary of State when a foreign corporation does business in Texas and is named in a suit arising from that business. Alternatively, MTO has served Mr. Frank Van Court, Chairman of Interedec (USA), Inc.; Mr. Van Court holds a REDEC power of attorney and thus would seem to fall within Art. 2031b(2),

which permits service on "the person who, at the time of the service, is in charge of any business" then being conducted in Texas by a foreign corporation. The foreign corporation must have done business in Texas and be named in a suit arising out of that business.

■■■ On a motion to dismiss for lack of personal jurisdiction, the Court must first determine whether the defendant is reached by the long-arm statute, and then must consider whether requiring him to stay within its grasp comports with due process. *Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978). The plaintiff has the burden when invoking the Court's jurisdiction to make a prima facie showing of the facts on which jurisdiction is based. *Id.*

■■■ The long-arm statute does not define "doing business" except to say that, at the very least, it may consist of committing a tort in Texas or entering into a contract with a resident of Texas which requires some performance here. The statute says that "other acts" may constitute doing business, but does not specify nor exclude any such acts.[1] The Court may find that a corporation is doing business if it engages in substantial and regular activities, *Wilkerson v. Fortuna Corporation*, 554 F.2d 745 (5th Cir. 1977), or if the traditional trappings of such activity are present: assets, office, agents, employees. *Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978). Moreover, doing business may be imputed from the activities of a subsidiary or agent; in such a situation the plaintiff must make a prima facie showing of the existence of the agency. *Id.*

The plaintiff points to several facts and circumstances which suggest that REDEC

is doing business in Texas. These will be analyzed separately to see which, if any, survives an Art. 2031b analysis.

First to be considered are indications of the traditional manifestations of doing business, as contemplated by *Walker v. Newgent*, 583 F.2d 163 (5th Cir. 1978). REDEC denies that it has an office in Texas, but there are indications to the contrary. A letter from Ghaith R. Pharaon, Chairman of REDEC, to Mr. Lee Selvy, refers to future activity to be conducted from "our Houston office." Another letter to Mr. Selvy is written on REDEC stationery which includes Houston in a list of cities where REDEC presumably has offices or agents. Mr. Frank Van Court, Chairman of Interedec (USA), Inc. and holder of REDEC's power of attorney, testified on deposition that REDEC people use Interedec's office while in Houston. A letter from Selvy to Dr. Pharaon refers to a meeting between them in "the Houston office"; similar references are made in the deposition testimony of Richard Schmidt. Mr. Selvy testified about going to work in Houston as a representative or agent for REDEC, a position which plaintiff claims is now occupied by Interedec (USA), Inc., through Mr. Van Court. Interedec (USA), Inc. is owned 20% by REDEC and 80% by GRP, a holding company wholly owned by Dr. Pharaon. Interedec is listed on REDEC's stationery as REDEC's exclusive representative, and REDEC pays 120% of Interedec's office expenses, including salaries, pursuant to a contract which requires Interedec to make purchases, supply support services, and provide consultation as required. Interedec does not provide any services to corporate entities unrelated to REDEC. Interedec's

1. The Court notes that Art. 8.01, Tex.Bus.Corp. Act Ann. (Vernon 1980) lists several activities (including maintaining a suit, maintaining bank accounts, financing property, and conducting isolated transactions) which are *not* to be considered doing business *for purposes of requiring a foreign business to procure a permit.* The Bar Committee Comments to Article 8.01 point out that under the prior statute these activities were "not doing business" for purposes of the long-arm statute as well. The implication is clear that these activities now may be considered "other acts that may constitute doing business" in applying Art. 2031b(4). *But see Gutierrez v. Raymond International, Inc.,* 484 F.Supp. 241 (S.D.Tex.1979). This construction is consistent with the language of Art. 2031b(2) and (3), which expressly refer to foreign corporations who are doing business even though not required to obtain a permit. If a foreign corporation did only those activities listed in Art. 8.01 of the Bus.Corp.Act, a permit would not be required, but the corporation could still be doing business under Art. 2031b.

office is shared by United Commercial Agencies, a corporation (owned at least partially by Dr. Pharaon) which is responsible for insuring REDEC's cargoes.

There is evidence that REDEC received considerable cargo shipped from the Port of Houston; there have also been air shipments from Texas. According to Mr. Van Court, REDEC buys airplane parts in Texas, and guarantees financing for its subsidiaries' and affiliates' investments in Texas. REDEC maintains a bank account in Houston for its aviation division, and the REDEC-Interedec contract contemplates an escrow account here to pay for purchases made on REDEC's behalf.

The Court is satisfied that the plaintiff has made a prima facie showing of the traditional manifestations of doing business: office, assets, agents or employees.

There is also evidence that the broad-based activities of REDEC subsidiaries, such as Interedec (USA), Inc. and International Maritime Carriers, may be imputed to REDEC because of the degree of control exercised by the latter. Mr. Selvy claimed in deposition that Dr. Pharaon personally controls all of his various interests, makes final hiring decisions for the subsidiary firms, and essentially has the last word; and Dr. Pharaon, according to Selvy and Schmidt, is REDEC. A letter from Dr. Pharaon to Mr. Selvy, then president of International Maritime Carriers, cautioned him that all the organizations within the corporate structure must follow directives from senior management; Mr. Selvy was warned not to make unilateral or independent decisions which may not be in the best interest of "the company."

■ Defendant stresses in its supporting memorandum that regardless of what activity may constitute doing business, Art. 2031b requires the plaintiff to show that this cause of action arose from that business. When a plaintiff relies on a broad base of business manifestations and activities, however, there is no need to show a direct link between a particular business act and the cause of action. *Wilkerson v. Fortuna Corp.*, 554 F.2d 745 (5th Cir. 1977).

Because Art. 2031b has been construed to reach as far as the Constitution permits, it is sufficient to show substantial and continuous activities if the cause of action is totally unrelated, *Jamesbury Corp. v. Kitamura Valve Mfg. Co.*, 484 F.Supp. 533 (S.D.Tex. 1980), or to show some connection, even indirect, if the business activity is less extensive. *Ayers v. Copperweld Corp.*, 487 F.Supp. 593 (S.D.Tex.1980). The focus should be on the due process considerations of minimum contacts and fundamental fairness, *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex.1977). Due process requires only a nexus, and not a direct link between the business activity and the cause of action. *National Geographic v. California Equalization Bd.*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977).

■ The Court finds such a nexus here. REDEC's activities included contracting for delivery of pipe from a Texas plant to the Port of Houston. The subsequent shipment from Houston to Jeddah, which gave rise to this suit, is not so unrelated to REDEC's business activities as to offend either Art. 2031b or the due process clause.

The Court concludes that the activities which constitute "doing business" also satisfy the minimum contacts requirement of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and that it is not fundamentally unfair to require REDEC to defend in this forum. REDEC has organized subsidiaries here and appears to operate them with a tight rein. REDEC has also instituted lawsuits in this forum, contracted with Interedec (USA), Inc. in this forum, and otherwise affirmatively availed itself of the benefits and protections of the law here. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

An alternative approach in this case is to examine the particular contract involved in light of the contract provision of Art. 2031b. The contract on its face is between MTO, a Texas corporation, and American Arabian Service Corporation (AMAR); it requires performance in Texas. The long-arm stat-

ute characterizes a contract with a Texas resident requiring some performance here as "doing business." The plaintiff claims that AMAR, through Richard Schmidt, was signing as agent for REDEC and that REDEC is thus a party to a contract within the scope of Art. 2031b. To assert jurisdiction over REDEC in such a case, the plaintiff must make a prima facie showing of the agency.

The Court is satisfied that the plaintiff has met its burden. Mr. Selvy testified that Dr. Pharaon referred to Schmidt as REDEC's exclusive representative in the United States. Mr. Schmidt stated in deposition that Dr. Pharaon often said that Schmidt was REDEC in this country. A telex to Johns-Manville from REDEC refers to "our Mr. Schmidt," and REDEC notified Schmidt of the Johns-Manville contract in a communication requesting that Schmidt follow up the order with shipping arrangements.

These facts are a prima facie showing of agency adequate to support personal jurisdiction over REDEC. The Court stresses that this is not a determination of this issue for purposes of the merits of the case; plaintiff must prove the agency relationship at trial if it relies on an agency theory.

There is no question that this cause of action arose out of the contact between MTO and AMAR (as REDEC's agent) which constitutes doing business, so Art. 2031b is satisfied. The due process analysis set out above need not be repeated here; briefly, REDEC's contacts with Texas are sufficient to justify requiring REDEC to defend in this forum.

The Court concludes that REDEC is amenable to process under 2031b, and that service on the Secretary of State was properly effected. The service on Mr. Van Court need not be considered. Accordingly, defendant's motion to dismiss on those grounds is DENIED. Defendant's motion to dismiss *forum non conveniens* is also DENIED. REDEC has failed to identify any essential witnesses it cannot produce in this trial, or otherwise specify why the plaintiff's choice of forum should be disturbed.

