In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00117-CR
______________________________


STEFFON O'KEITH HATTEN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2004-F-00176


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Steffon O'Keith Hatten appeals from the revocation of his community supervision and
adjudication of guilt on charges of theft. See Tex. Pen. Code Ann. § 31.03 (Vernon Supp. 2005). 
His sentence was imposed March 8, 2006. Hatten timely filed a motion for new trial April 7, 2006. 
            According to Rule 26.2, after Hatten timely filed his motion for new trial, he had ninety days
after the date sentence was imposed to file a notice of appeal. See Tex. R. App. P. 26.2(a)(2). Hatten
had until June 6, 2006, to file a notice of appeal. He did not, however, file his notice of appeal until
June 8, 2006. No motion for extension of time to file his notice of appeal was filed. See Tex. R.
App. P. 26.3.


 Hence, this appeal is untimely, and we are without jurisdiction to hear this case.
            We dismiss the appeal for want of jurisdiction. 



                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 12, 2006
Date Decided:             July 13, 2006

Do Not Publish



tion. Burger King Corp., 471 U.S. at 475;
Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226. General jurisdiction may only be
exercised when the foreign corporation's contacts in Texas are continuous and systemic. Marchand,
83 S.W.3d at 797; Helicopteros Nacionales de Columbia, S.A., 466 U.S. at 414-15. To negate the
exercise of general jurisdiction, the nonresident defendant must show it does not conduct substantial
activities within the forum. See Marchand, 83 S.W.3d at 797; CSR Ltd. v. Link, 925 S.W.2d 591,
595 (Tex. 1996). Foreseeability is an important consideration in deciding whether the nonresident
defendant has purposefully established "minimum contacts" with Texas. World-Wide Volkswagen
Corp., 444 U.S. at 297; Marchand, 83 S.W.3d at 795 (citing Guardian Royal Exch. Assurance, Ltd.,
815 S.W.2d at 227).

 Two recent Texas Supreme Court opinions have outlined the law governing minimum
contacts analysis with respect to foreign corporations. In Marchand, a Belgian citizen negotiated
in Belgium an employment contract with BMC Software Belgium (BMCB), a wholly-owned
subsidiary of Houston-based BMC Software. Marchand, 83 S.W.3d at 793. The terms of the
contract called for work to be completed in Belgium, with bonuses to be paid in stock options. The
terms of Marchand's employment were governed by Belgian law. BMCB later fired Marchand, who
sued BMCB in Texas under various theories for recovery. Marchand claimed Texas courts had
personal jurisdiction over BMCB because the Belgian company was a wholly-owned subsidiary of
a company headquartered in Texas. Id. The Texas Supreme Court ruled that the nature of BMCB's
contacts with Marchand arose outside of Texas from a contract that was negotiated and formed in
Europe. Thus, Marchand's damages under a breach of contract claim arose outside of Texas and
BMCB was not subject to specific, personal jurisdiction. Id. Additionally, even though BMCB
purchased products from its parent company in Texas for distribution in Europe, these contacts were
insufficient to subject BMCB to general jurisdiction. Id. (citing Helicopteros Nacionales de
Columbia, S.A., 466 U.S at 415-18 ("mere purchases, even if occurring at regular intervals, are not
enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in
a cause of action not related to those purchase transactions")). The Texas Supreme Court then found
neither general nor specific jurisdiction had been established and rendered judgment dismissing
Marchand's suit against the Belgian company. Marchand, 83 S.W.3d at 801.

 In American Type Culture Collection, Inc. v. Coleman, veterans of the 1991 Persian Gulf
War sued, alleging ATCC sold material, equipment, and technology to Iraq that was used to create
biological and chemical weapons. Coleman, 83 S.W.3d at 804. Coleman alleged ATCC, a storage
facility for toxic bio-organisms and cultures located in Maryland, was subject to personal jurisdiction
in Texas because 3.5% of ATCC's worldwide sales arose from contracts with Texas (including an
agreement with the University of Texas Southwestern Medical Center in Dallas). The Texas
Supreme Court found that personal jurisdiction did not exist: ATCC had purposefully structured its
transactions to avoid the benefits and protections of Texas law by expressly stating that its contracts
were governed by another state's laws, title to all of ATCC's sales to Texas purchasers passed outside
of Texas, and ATCC's purchases and trips related to Texas vendors were by themselves insufficient
to support the exercise of general jurisdiction. Additionally, the contracts giving rise to the cause
of action had no relationship to Texas; therefore, specific jurisdiction did not exist. Id. 



Analysis

 In the case before this Court, Cain contends HSD's contacts with Texas can be found in three
places: (1) HSD's contract with Thomson to ship products to El Paso, (2) the corporate structure and
relationships of the various Hitachi entities with HSD, including Hitachi America Limited (the
American subsidiary of Hitachi, Ltd., and an entity Cain presumes has ties to Texas), and (3) HSD's
internet presence. Cain does not allege that jurisdiction exists because HSD has maintained an
office, warehouse space, a mailing address, a telephone listing, subscribed to an answering service,
or has any other direct business location in Texas. Cf. Michel v. Rocket Eng'r Corp., 45 S.W.3d 658,
666-72 (Tex. App.-Fort Worth 2001, no pet.) (first inquiry in general jurisdiction analysis is whether
nonresident business has created "general business presence" in forum state).

 The last petition on file with the trial court before the hearing on HSD's special appearance
was Cain's first amended petition. (2) Cain alleged HSD was subject to personal jurisdiction in Texas
because HSD "is a subsidiary of Hitachi Cable, Ltd., and a substantial number of its products are
supplied for use in products sold in Texas." The petition also alleged that the plug on the clock radio
"was manufactured by [HSD] and was identified as 'SHIN DIN SD-008 E84541.'" Cain's petition
contains no allegations that minimum contacts with Texas can be shown through the defendant's
internet presence. Cain's claim that HSD's internet presence should be considered in making a
minimum contacts analysis appears-for the first time-on page five of her April 10, 2002, response
to HSD's special appearance. Cain filed this document five calendar days before the hearing on
HSD's special appearance. (3) Cain's response alleges HSD is subject to general personal jurisdiction
because the website boasts HSD has customers "all over the world," "invites customers to 'Call our
sales team immediately,'" provides a copyright page claiming complete ownership of the internet site
by Hitachi Cable, Ltd., and displays cables that have been certified by Underwriters Laboratories Inc. 
Cain claims the UL listing is evidence of HSD's willingness to submit to the jurisdiction of foreign
markets in the United States, including Texas. 

1. The Thomson Contract.

 Cain first claims HSD has subjected itself to personal jurisdiction in Texas because it ships
goods to El Paso. 

 Under the minimum contacts analysis, we must determine whether the
nonresident defendant has purposefully availed itself of the privilege of conducting
activities within the forum state, thus invoking the benefits and protections of its
laws. Burger King, 471 U.S. at 474-75. This "purposeful availment" requirement
ensures that a nonresident defendant will not be haled into a jurisdiction based solely
upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of
another party or a third person." Burger King, 471 U.S. at 475; Helicopteros, 466
U.S. at 417; World-Wide Volkswagen Corp., 444 U.S. at 298.


Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226.

 In the case at bar, the evidence demonstrates that HSD contracted with Thomson, a French
company, for the shipment of certain goods. The terms of the contract provided that Thomson
directed where those goods would be shipped. Therefore, HSD's direct contacts with Texas occur
at the direction of a third party. Such contact cannot be said to meet the requirements for "purposeful
availment" because this contact comes at the direction of a third party. See Burger King Corp., 471
U.S. at 475. The contract and its performance are insufficient to provide a basis for the exercise of
general personal jurisdiction. Additionally, as there was no evidence that the plug that allegedly
caused the fire was shipped as part of the Thomson contract, and because there was evidence to
refute such a claim, the Thomson contract supports the exercise of neither specific nor general
jurisdiction by a Texas trial court. See Coleman, 83 S.W.3d at 806, 810; Marchand, 83 S.W.3d at
796-97.

2. Hitachi's Corporate Structure.

 Second, Cain claims HSD "is a subsidiary of [HC] and a substantial number of its products
are shipped for use in products sold in Texas." Based on HC's contacts with Texas, Cain argues the
trial court may exercise personal jurisdiction over HSD.

 Personal jurisdiction may exist over a nonresident defendant if the relationship
between the foreign corporation and its parent corporation that does business in
Texas is one that would allow the court to impute the parent corporation's "doing
business" to the subsidiary. Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th
Cir. 1983); Walker v. Newgent, 583 F.2d 163, 167 (5th Cir. 1978). The rationale for
exercising jurisdiction is that "the parent corporation exerts such domination and
control over its subsidiary 'that they do not in reality constitute separate and distinct
corporate entities but are one and the same corporation for purposes of jurisdiction.'"
Hargrave, 710 F.2d at 1159 (citations omitted); see also Conner v. ContiCarriers &
Terminals, Inc., 944 S.W.2d 405, 418 (Tex. App.-Houston [14th Dist.] 1997, no
writ). The party seeking to ascribe one corporation's actions to another by
disregarding their distinct corporate entities must prove this allegation. Walker, 583
F.2d at 167; Conner, 944 S.W.2d at 418-19; see also Lucas v. Texas Indus., Inc., 696
S.W.2d 372, 375 (Tex. 1984). ...


 To "fuse" the parent company and its subsidiary for jurisdictional purposes, the
plaintiffs must prove the parent controls the internal business operations and affairs
of the subsidiary. Conner, 944 S.W.2d at 418-19 (discussing Hargrave, 710 F.2d at
1160; Walker, 583 F.2d at 167). But the degree of control the parent exercises must
be greater than that normally associated with common ownership and directorship;
the evidence must show that the two entities cease to be separate so that the corporate
fiction should be disregarded to prevent fraud or injustice. See Hargrave, 710 F.2d
at 1160; Conner, 944 S.W.2d at 419; see also Gentry v. Credit Plan Corp. of
Houston, 528 S.W.2d 571, 573 (Tex. 1975).

Marchand, 83 S.W.3d at 798-99.

 HSD presented evidence that HC directly owns 28% of HSD's common stock and indirectly
owns approximately 22% of HSD's common stock. At the hearing, Cain conceded she had no
evidence that HC's direct and indirect ownership of HSD amounted to more than 50% of HSD's total
ownership. There is no evidence before this Court that HC's stock ownership gives it actual control
of HSD's day-to-day operations. Even complete stock ownership does not, alone, provide the
necessary proof to allow jurisdiction over the parent to create jurisdiction over the subsidiary. See
Marchand, 83 S.W.3d at 793, 799.

 Chan's affidavits declare HSD and HC have separate managerial staffs, file separate tax
returns, and are, in essence, separate companies. Cain presented no evidence to refute HSD's
position that the two companies are operated by separate managerial staffs. The only evidence Cain
offered to show common management is information that HSD's website contains links to HC's
website and that HC retains the copyright to the content of HSD's website. There was no showing
of duplicate corporate officers, nor of control of HSD's day-to-day affairs by HC officials. In fact,
HSD expressly denied such accusations by Cain during the discovery process. That HC claims the
copyright to HSD's web content demonstrates nothing more than HC's provision of technical support
to HSD's website. (4) It does not demonstrate HSD is the alter ego of HC, nor does it demonstrate
control of HSD's corporate policy or execution of HSD's day-to-day affairs. The sole Securities and
Exchange Commission (SEC) filing in the record before us is for Hitachi, Ltd.-not HSD or HC-and
Hitachi, Ltd.'s SEC filing does not list HSD as a subsidiary of either Hitachi, Ltd., or HC. Cf. id. at
799. Nor does HC's reference to HSD in its annual financial report, without more, support an alter
ego claim. See id. Therefore, the evidence in the record is insufficient to establish that HSD is the
alter ego of HC for the purpose of exercising general personal jurisdiction over HSD based on HC's
contacts with Texas. See id. (parent company's Texas contacts not attributed to subsidiary because
alter ego not established). 

3. HSD's Internet Presence.

 Finally, Cain suggests the trial court may properly exercise personal jurisdiction over HSD
based on HSD's internet presence. "The Internet is a global communications network that makes it
possible to conduct business throughout the world entirely from a desktop." Jones v. Beech Aircraft
Corp., 995 S.W.2d 767, 772 (Tex. App.-San Antonio 1999, pet. dism'd w.o.j.). In Texas, internet
usage is judged on a "sliding scale" or "spectrum" for the purpose of jurisdictional analysis. Id.;
Riviera Operating Corp. v. Dawson, 29 S.W.3d 905, 911 (Tex. App.-Beaumont 2000, pet. denied).

 At one end of the scale are situations in which a defendant clearly does
business over the Internet by entering into contracts with residents of other states that
involve the knowing and repeated transmission of computer files over the Internet. 
At the other end of the scale are passive web site situations. A passive web site,
which solely makes information available to interested parties, is not grounds for
personal jurisdiction . . . . In the middle are "interactive" web sites, which permit a
user to exchange information with the host computer (the person or company
maintaining the web site). In these cases, the exercise of jurisdiction is determined
by examining the level of interactivity between the parties on the web site.


Jones, 995 S.W.2d at 772-73 (citations omitted).

 At the special appearance hearing, HSD argued its website was passive. Cain presented no
evidence HSD transacted business over the internet with Texas residents. Instead, the evidence Cain
submitted regarding HSD's website suggests HSD might have a customer base in the United States,
but that same evidence does not specifically state HSD has customers in Texas. The record also
shows that HC's website permits internet users to e-mail questions or submit comments to HC, but
there is no evidence those same users may e-mail questions or comments to HSD through HC's
website. The record does not contain any evidence that someone in Texas would be able to complete
a purchase order for HSD products over the internet. Based on the evidence before us, we believe
HSD's website has such an extremely low level of interactivity that HSD may not fairly be subjected
to general personal jurisdiction in Texas.

 Additionally, the record contains no evidence that Texans have ever completed transactions
over the internet with HSD. This information, if entered into evidence and included in the appellate
record, would strongly support the trial court's exercise of general personal jurisdiction over a foreign
corporation such as HSD. Absent such evidence, there is nothing to show HSD has any minimum
contacts with Texas via its internet presence. We sustain HSD's first point of error.

4. Unchallenged Statements in Chan's Affidavits.

 Nonetheless, if Chan's affidavits were legally insufficient to support HSD's special
appearance, then HSD's special appearance would be waived and its filings thereby converted into
a general appearance subjecting HSD to general jurisdiction in Texas under the doctrine of waiver. 
See Tex. R. Civ. P. 120a(1) (every appearance that is not a special appearance is a general
appearance). To refute this possibility, HSD contends in its second appellate issue the trial court
erred by sustaining Cain's objections to Chan's affidavit. 

 In the hearing before the trial court on HSD's special appearance, Cain lodged objections to
five of the twelve paragraphs in one of Chan's affidavits. (5) Her objections may be grouped into two
areas: (1) the affidavits did not demonstrate any basis for Chan's personal knowledge, and (2) the
affidavits were vague and contained limitations. The trial court held both affidavits, in their entirety,
were not based on personal knowledge, were vague and ambiguous, and were merely based on
"information and belief." The trial court then held HSD was subject to the court's general
jurisdiction.

 First, if the statements in an affidavit clearly show the affiant was testifying from personal
knowledge, the affidavit does not need to specifically state it was made on personal knowledge. 
Closs v. Goose Creek Consol. Indep. Sch. Dist., 874 S.W.2d 859, 868 (Tex. App.-Texarkana 1994,
no writ). Chan's affidavit stated, "My name is Chan Ka Ming. I am capable of making this
affirmation. The facts stated in this affirmation are within my personal knowledge, are true and
correct, and are as follows . . . ." Chan's second affidavit begins with the same language. We
believe such language satisfies the requirement that an affidavit be made on personal knowledge. 
To the degree that the trial court struck the affidavits on the basis that Chan's testimony was given
outside his personal knowledge, the trial court erred because the record clearly refutes such a holding
and there is no evidence in the record to contradict Chan's claim that his affidavit was based on
personal knowledge.

 Second, if a trial court legitimately finds certain parts of an affidavit improper, it should still
consider the remainder of the affidavit in determining whether the special appearance should be
granted. Cf. Grotjohn Precise Connexiones Int'l, S.A. v. JEM Fin., Inc., 12 S.W.3d 859, 867 (Tex.
App.-Texarkana 2000, no pet.). In this case, even if the trial court ignores all those passages in the
first affidavit to which Cain objects, the remaining portions of the first affidavit and the second
affidavit (to which Cain made no objection) are sufficient to negate the plaintiff's grounds for
specific and general jurisdiction. The second affidavit declares HSD's only contacts with Texas
come at the direction of a third party and involve transfer of products to an El Paso freight agent for
transportation to Mexico; otherwise, HSD has no contacts with Texas. Cain did not object to this
portion of the supplemental affidavit; its evidentiary value to negate the exercise of general
jurisdiction therefore went unchallenged. As previously discussed, contacts with the forum state that
occur at the direction of a third party may not justify the exercise of general jurisdiction. See Burger
King Corp., 471 U.S. at 475; Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226. Paragraph
five of Chan's first affidavit (to which Cain did not object) also clearly states HSD does not do any
business in Texas. And Cain conceded before the trial court that HSD did not manufacture the plug
described in her original or amended petitions. Accordingly, the affidavits contained sufficient
remaining evidence-even if the objected-to evidence is excluded-to negate the exercise of both
general and specific personal jurisdiction by a Texas trial court over HSD. The trial court erred by
holding to the contrary.

 We reverse the trial court's decision, grant the special appearance of Hitachi Shin Din Cable,
Ltd., and dismiss all claims herein against it for lack of jurisdiction. 



 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 7, 2002

Date Decided: May 5, 2003
1. The  plaintiffs  identified  the  defective  product  as  "SHIN  DIN  SD-008  E84541  (plug)
+ SSPT-1 E56356 VW1 18AWGX2C TA HSING (wiring)." HSD did manufacture an item
numbered SHIN DIN SD-008 E84541 plug + SPT-1, but only until 1993. HSD did not sell its plug
and wiring combination to anyone in the United States, but manufactured it for distribution in Hong
Kong. HSD suspects the wire and plug at issue in this case are counterfeit. 
2. Cain filed her first amended petition on September 24, 2001. The trial court heard
arguments on HSD's special appearance on April 15, 2002. Cain filed her second amended petition
on May 10, 2002. Thus, for determining jurisdiction, we must look to all filings as of April 15,
2002.
3. HSD did not object to lack of time to prepare for the hearing. HSD's counsel presented
evidence and argument on HSD's internet presence in relationship to the minimum contacts analysis
at the April 15 hearing.
4. The "License and Technical Assistance Agreement" between HC and HSD requires that
HSD "not disclose or license to any third parties TECHNICAL INFORMATION in written, printed,
oral or other form received from HCL . . . ." for a period of five years beyond the expiration of the
contract. Given this secrecy agreement, it is not surprising HC retained the copyright to HSD's
website.
5. Cain did not object to any portions of Chan's second affidavit.