United States Court of Appeals, Eleventh Circuit.

No. 94-8592.

Non-Argument Calendar.

Owen F. SILVIOUS, Plaintiff-Appellant,

v.

Ghaith R. PHARAON, Defendant-Appellee.

June 9, 1995.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV 492-126), John F. Nangle, Judge.

Before ANDERSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

This case requires us to determine whether the 1993 revision of Federal Rule of Civil Procedure 4 eliminated the practice of allowing an agent in the United States to accept service of process for a foreign defendant. The district court concluded that service could not be effected on a foreign defendant by serving his putative agent in the United States. We REVERSE and REMAND.

## I. BACKGROUND

Plaintiff-appellant Owen Silvious filed suit against defendant Ghaith R. Pharaon[1] in May, 1992, and alleged a cause of action under the Racketeer influenced and Corrupt Organization Act, 18 U.S.C. § 1964(c), ("RICO"). Silvious charged that Pharaon, as owner and operator of the Bank of Credit & Commerce International ("BCCI"), defrauded Silvious of money deposited with BCCI in 1985 and due to be repaid to Silvious in October, 1990. Allegedly,

---

[1] Pharaon has never filed an answer or motion with the district court and has not filed any briefs or other documents with this court regarding this matter.

Pharaon has left the United States and is in Saudi Arabia.[2]

In May, 1992, Silvious began his unrelenting effort to serve Pharaon in Richmond Hill, Georgia[3] and in Saudi Arabia. Despite the InterRedec attorney's notifying the United States Marshal's office that Pharaon did not reside at the Richmond Hill plantation, Silvious attempted to serve Pharaon at the Richmond Hill address several times.

In August, 1992, Silvious moved for a court order for service for the second time. He requested that the district court approve one of the following methods of service for Pharaon: (1) delivery of the complaint, summons and amended pleadings to an employee of Pharaon's, as requested in the earlier motion; (2) physical attachment of the documents to the Richmond Hill structure itself;[4]

---

[2]Although Pharaon has been indicted in the Southern District of Florida for RICO violations, in September of 1993 he remained outside the jurisdiction of the court, "at large." *United States v. Paul,* 150 F.R.D. 696, 697 (S.D.Fla.1993); *accord Accused BCCI Front Man Hit with $37 Million Fine,* USA Today, Sept. 18, 1991, at 2A [hereinafter *Front Man Hit with $37 Million Fine* ]; *Fed Freezes Assets of Financier Accused of Fronting for BCCI,* Investor's Bus. Daily, Sept. 18, 1991, at 25 [hereinafter *Fed Freezes Assets* ].

[3]The Richmond Hill property is alternatively known as the old Henry Ford Plantation, Cherry Hill Plantation and Sterling Bluffs Plantation. InterRedec, Inc., a company reputed to be owned or controlled by Pharaon, *see Maritime Transp. Overseas, Inc. v. Saudi Research & Dev. Corp.,* 507 F.Supp. 701, 704-05 (S.D.Tex.1981); *Front Man Hit with $37 Million Fine; Fed Freezes Assets,* has been headquartered there and InterRedec representatives can still be contacted at the plantation, *see* R1-18-2. Pharaon reportedly owns the plantation. InterRedec also has become involved in litigation against Pharaon. *Board of Governors of Fed. Reserve Sys. v. Pharaon,* 140 F.R.D. 642, 643 (S.D.N.Y.1991).

[4]Several days prior to this motion being filed, the Bryan County Sheriff's Department attempted service by leaving the complaint, summons and amended pleadings "attached to [the] door on the fountain side of the residence." R1-13-1. Additionally,

or (3) publication of notice in either the *International Herald Tribune* or the *Economist,* publications distributed in France and Saudi Arabia, where it was thought Pharaon might be located.  The magistrate judge consequently directed that the U.S. Marshal

> attempt service upon the defendant at any place that he may be found within the United States [as allowed by the RICO statute, 18 U.S.C. § 1965(d) ].  Additionally, *the Marshal may leave a copy of the summons and complaint at Cherry Hill Plantation ... with a person of suitable age and discretion residing therein or with an agent authorized by appointment or by law to receive service of process.*  Fed.R.Civ.P. 4(d)(1) [ (1992) ].  If the Marshal is unable to perfect service using these methods, the plaintiff may then urge the Court to consider other methods of service.

R1-15-1 to 2.  The court, however, denied Silvious's request for service by publication and determined that Silvious had not complied with Georgia's long-arm statute for service by publication.  In September, 1992, Dooley E. Culbertson, purportedly the Chairman of the Board and Chief Executive Officer of InterRedec, wrote the court a letter stating that

> Pharaon is not a resident of Sterling Bluff Plantation nor has he ever been a legal resident.  Furthermore, Dr. Pharaon owns no real property in Bryan County and has never been an employee, officer or director of InterRedec.
>
> In light of the above, it is useless for the court to attempt to serve papers on Ghaith Pharaon at the InterRedec offices at Sterling Bluff Plantation.  Dr. Pharaon is represented by the firm of Whitman and Ransom, 200 Park Avenue, Suite 2800, New York, New York 10166, attention Mr. Berge Setrakian.  I do not know, however, whether that law firm or any of its members serve in the capacity of agent of

---

a copy again was mailed.  Upon learning of the attempted service, Silvious amended his motion to request that this latest attempt at service be deemed effective under Georgia law and that, additionally, publication be allowed.  Silvious apparently contends that this service was proper under O.C.G.A. § 9-11-4(d)(6).  However, because service in this manner is limited to actions in which the amount in controversy is less than $200.00, Silvious could not have complied with Georgia's process statute in this manner.  *See* O.C.G.A. § 9-11-4(d)(6).

record for Dr. Pharaon and doubt whether they can accept service for him.

R1-18-2.[5] The magistrate judge promptly issued another order indicating its belief that "further efforts to serve the defendant at the Cherry Hill Plantation would be futile." R1-19-1 to 2. The court instead directed that a copy of the summons and complaint be mailed to Pharaon's counsel at the address provided by Culbertson. A copy of the summons and complaint were mailed, but counsel never responded.

Silvious then endeavored to serve Pharaon by mail in Saudi Arabia, and he again moved for a determination of sufficiency of process. In June, 1993, the magistrate judge concluded that despite Silvious's numerous attempts to effect mail service, Pharaon had not been served properly yet. By order dated November 1, 1993, the magistrate judge ruled that none of the attempts at service had been successful but that, because Silvious was attempting service in a foreign country, the 120 day time limit of Fed.R.Civ.P. 4(j) (1992) did not apply to this action. Therefore, instead of dismissing the action pursuant to Rule 4(j), the magistrate judge allowed Silvious thirty additional days to complete service. If Silvious failed to effect service, the magistrate judge stated that he would recommend that the case be

---

[5]Contrary to these statements, Silvious points out several publications in which Pharaon is listed as or referred to as the Chairman or owner of InterRedec, Inc. *See* R1-36 (United States Commercial Center, Letter from American Consulate General, Jeddah, Saudi Arabia, to Owen F. Silvious (undated); *The International Who's Who 1992-93,* at 1278 (56th ed. 1992); *Principal International Businesses 1993: The World Marketing Directory,* at 972-73 (1992)); *see also Front Man Hit with $37 Million Fine; Fed Freezes Assets.*

dismissed *without prejudice.*

On January 21, 1994, the Bryan County Sheriff's Department delivered the summons, complaint and amended complaint to Kethesparan Srikanthan, allegedly an agent of Pharaon, at Sterling Bluff Plantation. The affidavit and certificate of service were filed with the district court on January 24, 1994. When Pharaon failed to answer, Silvious moved for a default judgment.

On March 21, 1994, the magistrate judge entered a Report and Recommendation to the district court finding that the newly amended Rule 4 did not allow Silvious to use substituted service on Pharaon because Pharaon was physically outside of the United States.[6] Silvious objected to the magistrate judge's report and recommendation; he argued *inter alia* that Pharaon's agent authorized by law was properly served and, therefore, substituted service had occurred.[7] After *de novo* review of the magistrate judge's report and recommendation, the district court dismissed Silvious's action for failure to effect service successfully. This appeal followed.

---

[6] The provisions for service of an individual found within a judicial district of the United States, and individuals in foreign countries, are found in separate parts of new Rule 4. Service upon individuals *found* within a judicial district of the United States may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State[.]"

R1-46-3 to 4 (citations omitted) (emphasis added) (alteration in original) (quoting Fed.R.Civ.P. 4(e)(1)).

[7] Silvious's additional claims lack merit and, therefore, we need not consider them here.

## II. DISCUSSION

"The starting point for an analysis of amenability to service of process in federal court is Federal Rule of Civil Procedure 4." *Brink's Mat, Ltd. v. Diamond,* 906 F.2d 1519, 1521 (11th Cir.1990). In 1993, during the pendency of Silvious's case, the Federal Rules of Civil Procedure were amended; Rule 4 was revised. Our review of this case focuses upon the district court's conclusion that revised Federal Rules of Civil Procedure 4(e) and (f) eliminated the practice of allowing an agent in the United States to receive service of process on behalf of a principal who was located in a foreign country. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 705, 707, 108 S.Ct. 2104, 2111, 2112, 100 L.Ed.2d 722 (1988). We review the district court's interpretation of the Federal Rules of Civil Procedure *de novo. Burns v. Lawther,* 44 F.3d 960, 963 (11th Cir.1995) (per curiam); *McBride v. Sharpe,* 25 F.3d 962, 968 (11th Cir.) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 489, 130 L.Ed.2d 401 (1994).

The Supreme Court's order amending the Rules stated in pertinent part "[t]hat the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 1993, and shall govern all proceedings in civil cases *thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending.*" Supreme Court Order of April 22, 1993, *reprinted in Federal Civil Judicial Procedure and Rules* 17 (West ed. 1994). The plain language of the Supreme Court's order indicates that the district court may apply either the rule in effect when the complaint was filed and the case thereby commenced

pursuant to Rule 3, or the rule in effect when service was attempted last in 1994.[8] *See Elkay Mfg. Co. v. Ebco Mfg. Co.,* No. 93 C 5106, 1995 U.S. Dist. LEXIS 473, at * 18 (N.D.Ill. Jan. 13, 1995); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 86 (S.D.N.Y.1995); *Lowe v. Hart,* 157 F.R.D. 550, 551 (M.D.Fla.1994). For analysis, we assume that the district court considered application of the revised Rule 4 to Silvious's attempts at service occurring after December 1, 1993, just and practicable.

The district court held that because Pharaon personally could not be found and served within the United States, Silvious must serve Pharaon pursuant to revised Rule 4(f), which provides for service abroad. Revised Rule 4(e), however, clearly provides for substituted service.[9] Prior to the revisions to Rule 4,

---

[8]The magistrate judge wrote:

> This is not a situation in which a procedural rule was changed during the service attempt and service was commenced when the former Rule was in force and completed after the new one took effect. Service had been attempted in several different ways pursuant to former Rule 4. By act of Congress, Rule 4 was changed. *The Court has no choice but to enforce the new Rule for all new attempts at service.*

R1-46-5 (emphasis added). The district court made no statement regarding its decision to apply the revised rule. We note, however, that the court clearly may apply former rules if the case is commenced thereunder.

[9]Revised Rule 4(e) reads in pertinent part as follows:

> **(e) Service Upon Individuals Within a Judicial District of the United States.** ... [S]ervice upon an individual ... *may be effected* in any judicial district of the United States:
>
> **(1)** pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the

substituted service did not fail merely because the principal was outside of the United States. *Volkswagenwerk Aktiengesellschaft,* 486 U.S. at 705, 108 S.Ct. at 2111 ("Under [the Due Process] Clause, foreign nationals are assured of either personal service, which *typically* will require service abroad ... *or* substituted service that provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (emphasis added) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). "Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

Substituted service on an agent of the party to the action is

---

defendant in an action brought in the courts of general jurisdiction of the State; *or*

**(2)** by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint *to an agent authorized by appointment or by law to receive service of process.*

Fed.R.Civ.P. 4(e) (emphasis added); *see also* 2 James W. Moore et al., *Moore's Federal Practice* § 4.10[4], at 4-183 (2d ed. 1995) ("Rule 4(e) permits personal service upon a defendant to be made by delivering a copy of the summons and complaint to a person deemed by the common or general law, federal and probably state, to be authorized to accept service of process on behalf of the defendant.").

a common practice. We find no indication that the amendments to Rule 4 were intended to alter this method of service for individual foreign defendants. The committee notes indicate that the changes in the Rule were intended to widen the reach of service of process, not to restrict it. *See* Fed.R.Civ.P. 4 advisory committee's note on 1993 amendment (subdivision (e) and subdivision (f)) ("Together with subdivision (f), [subdivision (e) ] provides for service on persons anywhere, subject to constitutional and statutory constraints.... [Subdivision (f) ] facilitate[s] the use of federal long-arm law in actions brought to enforce the federal law against defendants who cannot be served under any state law but who can be constitutionally subjected to the jurisdiction of the federal court.").

Moreover, revised Rule 4(e) makes no reference to where the defendant or individual is "found." We interpret the words "in any judicial district of the United States" in Rule 4(e) to describe the place where the personal or substituted service is "effected" rather than the location, at the precise moment of service, of the individual being served. The individual and the agent need not be in the same place. For example, in the case of an individual who is located in a foreign country but whose legal agent is located in a judicial district of the United States, a plaintiff may *either* personally serve the individual, *per* Rule 4(f), *or* effect substituted service through the individual's agent, *per* Rule 4(e). In deciding which subsection applies, the focus is upon the place where service is effected, not the location of the defendant at the time of service. This reading of Rule 4(e)(2) is consistent with

the language of subdivisions (g) and (h) which alternately refer to service within a judicial district and to service "*in a place* not within any judicial district of the United States." Fed.R.Civ.P. 4(g), 4(h)(2) (emphasis added). A plaintiff may effect proper service on an agent in the United States pursuant to Rule 4(e)(2) so long as that service complies with requirements of the Due Process Clause and the relevant statute, even though the individual party to be served may not be "found" personally in the United States at the time of service.

### III. CONCLUSION

Silvious has appealed the district court's dismissal of his claim for failure to effect proper service on Pharaon per Rule 4(f). We conclude that the amendments to Rule 4 did not abolish the practice of effecting service on an individual who resides outside of the United States by delivering a copy of the summons and complaint in the United States to an agent authorized by appointment or by law to receive service of process for that individual. Because we conclude that the district court misinterpreted the effect of the Rule 4 amendments in this case, we REVERSE and REMAND to the district court to determine whether Silvious properly served Pharaon under Rule 4(e)(2).